# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| FREDIN BROTHERS, INC. doing business as FREDIN BROS, INC., | Case No. 19-CV-1679 (NEB/HB) |
| Plaintiff, | ORDER ON DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION OR, IN THE ALTERNATIVE, TO TRANSFER |
| v. | |
| KYLE ANDERSON and JASON REED doing business as REED RANCH, | |
| Defendants. | |

In June 2019, Fredin Brothers, Inc. ("Fredin") brought a breach of contract suit against Kyle Anderson and Jason Reed in Minnesota state court. [ECF Nos. 1-1, 1-2.] Defendants Anderson and Reed removed the suit to federal court. [ECF No. 1.] They then moved to dismiss the suit for lack of personal jurisdiction or, in the alternative, to transfer the case to Texas. [ECF No. 7.] This Court determines it has no personal jurisdiction over the defendants and grants the motion to dismiss.

## BACKGROUND

Fredin is a Minnesota company that purchases and sells cattle for its customers. [ECF No. 18-1 ("Fredin Aff.") ¶ 2.] Fredin hires commissioned sales representatives in other states to help conduct its business. (See *id.* ¶ 3.) In Texas, one of Fredin's representatives is Chad Houck. (*Id.*) Houck coordinates Texas sales for Fredin, which operates its business from Minnesota headquarters. (*See id.* ¶¶ 3–6.) Thus, Fredin's

employees in Minnesota prepare invoices, communicate with customers, and store records at the headquarters. (*See id.* ¶¶ 4, 11–12, 32.)

Anderson is a resident of Texas who approached Houck in 2017 about using Fredin's services. [ECF No. 10 ¶¶ 2–3; Fredin Aff. ¶ 7.] Anderson then began purchasing cattle from Fredin, including three times in May 2019. [ECF No. 18-10 at 5–7.] All of Anderson's cattle bought from Fredin came from South Carolina, delivered to Anderson in Texas. (*Id.*)

Reed is a resident of South Dakota with a cattle ranch in Texas. [ECF No. 11 ¶¶ 2–4.] He approached Houck in 2016 about buying cattle from and selling cattle to Fredin. (Fredin Aff. ¶¶ 15–17). In February 2019, Reed agreed to buy cattle from Fredin. [ECF No. 18-9.] The cattle came from elsewhere in Texas and was delivered to Reed at his Texas ranch. (*Id.*)

The Fredin-Anderson agreements and the Fredin-Reed agreements are simply invoices. They each list the number of cattle, the price, the origin of the cattle, the location of delivery, two stamps certifying the sale, and Fredin's address. [ECF Nos. 18-10 at 5–7; 18-9.]

At some point after Fredin delivered the cattle to Reed and Anderson, a significant number became sick and died. [ECF No. 12-1 ¶ 15.] Anderson refused to pay Fredin under the contracts. (Fredin Aff. ¶ 22.) Reed claims he agreed with Fredin for Fredin to

buy back fifty of the cattle, but Fredin denies this. (*Id.* ¶ 24.) Fredin recovered some of the sick cattle and transported them to Minnesota. (*Id.* ¶ 23.)

Fredin sued Reed and Anderson in Minnesota state court claiming breach of contract and demanding payment. [ECF Nos. 1-1, 1-2.] Neither defendant lives in Minnesota, owns any property in Minnesota, or has visited Minnesota for any reason relevant to this suit. [*See generally* ECF Nos. 10, 11.] Fredin argues it is nonetheless proper to exercise personal jurisdiction over the defendants because they knew Fredin was a Minnesota corporation, and Fredin's alleged injury occurred in Minnesota and nowhere else.

## ANALYSIS

To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a prima facie showing of personal jurisdiction. *Dakota Indus., Inc. v. Dakota Sportswear, Inc.*, 946 F.2d 1384, 1387 (8th Cir. 1991). The plaintiff must provide sufficient facts "to support a reasonable inference that the defendant[] can be subjected to jurisdiction within the state." *Wells Dairy, Inc. v. Food Movers Int'l, Inc.*, 607 F.3d 515, 518 (8th Cir. 2010) (citation omitted) (alteration in original). "The plaintiff's showing must be tested, not by the pleadings alone, but by the affidavits and exhibits presented with the motions and in opposition thereto." *Id.* (quotation marks and citation omitted). The Court "must look at the facts in the light most favorable to the nonmoving party and resolve all factual conflicts in favor of that party." *Dakota Indus.*, 946 F.2d at 1387 (citation omitted).

A federal court may assert personal jurisdiction over a non-resident defendant only to the extent permitted by the long-arm statute of the forum state and the Due Process Clause of the Fourteenth Amendment. *Romak USA, Inc. v. Rich*, 384 F.3d 979, 984 (8th Cir. 2004). Minnesota's long-arm statute confers jurisdiction to the full extent of the Due Process Clause, so the Court only needs to consider whether the Court's assertion of jurisdiction comports with due process. *See Soo Line R.R. Co. v. Hawker Siddeley Canada, Inc.*, 950 F.2d 526, 528 (8th Cir. 1991) (citing *Rostad v. On-Deck, Inc.*, 372 N.W.2d 717, 719 (Minn. 1985)).

The question under due process is whether the non-resident defendant has sufficient "minimum contacts" with the forum state so that maintaining the suit "does not offend traditional conceptions of fair play and substantial justice." *K-V Pharm. Co. v. J. Uriach & CIA, S.A.*, 648 F.3d 588, 592 (8th Cir. 2011) (quotation marks and citation omitted). These contacts exist when the "defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). Unilateral activity of the plaintiff cannot satisfy this requirement. *Hanson v. Denckla*, 357 U.S. 235, 253 (1958).

The Eighth Circuit has laid out five factors to determine personal jurisdiction: (1) the nature and quality of the contacts with the forum state; (2) the quantity of the contacts with forum state; (3) the relationship of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience or

4

inconvenience to the parties. *K-V Pharm.*, 648 F.3d at 592. The third factor, the relationship between the cause of action to the contacts, distinguishes general and specific personal jurisdiction, because general jurisdiction "refers to the power of a state to adjudicate any cause of action involving a particular defendant . . . while specific jurisdiction requires that the cause of action arise from or relate to a defendant's action within the forum state." *Wells Dairy*, 607 F.3d at 518 (quotation marks and citation omitted). Fredin has only argued that specific personal jurisdiction exists.[1]

Under well-established Eighth Circuit precedent, personal jurisdiction is not present here, because the contacts between the Defendants and Minnesota are insufficient to comport with due process. *Dairy Farmers of America, Inc. v. Bassett & Walker International, Inc.*, is instructive. 702 F.3d 472 (8th Cir. 2012). In *Dairy Farmers*, a Kansas company with its principal place of business in Missouri ("DFA") contracted with a Canadian company. *Id.* at 474. When DFA sought to sue the Canadian company in Missouri for breach of contract, the Eighth Circuit affirmed that personal jurisdiction was lacking. *See id.* at 479. It found that "[t]he contract did not contemplate that DFA would perform coordination and processing in Missouri," and that DFA's decision to produce

---

[1] A court may assert general personal jurisdiction over a defendant if the defendant's contacts are so "continuous and systematic" that they render the defendant "essentially at home in the forum State." *Viasystems, Inc. v. EBM-Pabst St. Georgen GmbH & Co., KG*, 646 F.3d 589, 595 (8th Cir. 2011) (quotation marks and citation omitted). Neither defendant lives in Minnesota or owns any property in Minnesota. Fredin does not argue or establish general personal jurisdiction.

5

invoices in Missouri was insufficient to establish personal jurisdiction. *Id.* at 478–79. The defendant company "contracted to purchase product that was manufactured not in Missouri, but in Colorado." *Id.* at 478. "The contract called for delivery not to Missouri, but to Mexico." *Id.* And the fact that DFA "administered the contract in Missouri [was] 'random, fortuitous, or attenuated,'" so it did not establish personal jurisdiction. *Id.* at 478–79 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 486 (1985)). The Eighth Circuit also noted that "[t]he contract called for payment not to Missouri, but to Illinois." *Id.* at 478.

Similar facts present themselves here. Anderson and Reed contracted for cattle sourced from South Carolina or Texas, not Minnesota. Delivery occurred in Texas, not Minnesota. And although the defendants knew that Fredin's headquarters was in Minnesota, Fredin's decision to store records and administer the contracts in Minnesota does not create a relationship between the defendants and Minnesota. Any connection between Reed and Anderson and Minnesota is, at best, "random, fortuitous, or attenuated." *Id.* (quoting *Buger King*, 471 U.S. at 486). Defendants did not consciously avail themselves of the privilege of conducting business in Minnesota, have not invoked the benefits and protections of Minnesota's laws, and are not subject to personal jurisdiction here. *Id.*

Fredin points to two cases—*Wells Dairy* and *Datalink Corp. v. Perkins Eastman Architects, P.C.*, 33 F. Supp.3d 1068 (D. Minn. 2014)—in an attempt to escape the confines

6

of precedent. Both cases involve delivery contracts between in-state plaintiffs and out-of-state defendants. But both cases are distinguishable from this one for the same reason. In *Wells Dairy* and *Datalink*, the defendants requested the plaintiffs do something in the forum for the benefit of the defendant beyond the delivery contemplated in the contracts. In *Wells Dairy*, the defendant requested the plaintiff hold the goods in Iowa rather than deliver them to California, so the defendant's clients could pick them up. 607 F.3d at 519. The court found this request could establish personal jurisdiction in Iowa because it meant the defendant was "effectively accepting delivery and redelivering the product" in Iowa. *Id.* Similarly, in *Datalink*, the court found the exercise of personal jurisdiction proper over a New York defendant when the defendant asked the plaintiff to order specific products and have them stored in Minnesota until the defendant was ready for them. 33 F. Supp. 3d at 1075. The court found the defendant's "decision was pregnant with the potential for wide-ranging legal consequences." *Id.* Fredin has identified no request by either defendant to do anything in Minnesota. The only requests at issue are the requests for cattle, which came from outside Minnesota and went to Texas. Because *Wells Dairy* and *Datalink* are distinguishable, they do not assist the plaintiff here.

Even aside from the *Dairy Farmers* precedent and distinguishable case law, Court finds that the three main jurisdictional factors considered by the Eighth Circuit—the nature, quality, and quantity of the defendants' contacts with the forum—do not support personal jurisdiction here. *See K-V Pharm.*, 648 F.3d at 592. The defendants' contracts with

7

Fredin do not go beyond "[m]erely entering into a contract with a forum resident" and this act "does not provide the requisite contacts between a (nonresident) defendant and the forum state." *Scullin Steel v. Nat'l Ry. Utilization Corp.*, 676 F.2d 309, 313 (8th Cir. 1982) (citation omitted).

Additionally, the two secondary factors—the interest of the forum and the convenience of the parties—do not overcome the other factors. "Minnesota, naturally, has a clear interest in providing a forum for a corporation based in this state." *Datalink*, 33 F. Supp. 3d at 1076. And it will likely be more convenient for Fredin to litigate in its home state. But neither of factor outweighs the lack of connections that the defendants have with Minnesota based on the contracts, and thus the court lacks personal jurisdiction over them.

As an alternative to dismissal, Fredin requests jurisdictional discovery. Jurisdictional discovery must be "specifically targeted to flesh out connections already shown to exist." *BioFuels Automation, Inc. v. Kiewit Energy Co.*, No. 10-CV-610 (DSD/FLN), 2010 WL 3023391, at *2 (D. Minn. July 28, 2010) (citation omitted). Here, the record establishes insufficient connections to establish personal jurisdiction, and Fredin has not pointed to any evidence that discovery could reveal to strengthen these connections. As a result, jurisdictional discovery is unwarranted. *See, e.g.*, *3M Innovative Props. Co. v. TransWeb L.L.C.*, No. 10-CV-2132 (JRT/JSM), 2010 WL 11561519, at *1 (D. Minn. Sep. 20, 2010) ("[J]urisdictional discovery should not be had where it is clear that further

discovery would not demonstrate facts sufficient to constitute a basis for personal jurisdiction.")

Finally, because the Court finds it may not assert personal jurisdiction over the defendants, it does not reach their alternative argument to transfer venue.

## CONCLUSION

Based on the foregoing and on all the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1. Defendants' Motion to Dismiss [ECF No. 7] is GRANTED.

LET JUDGMENT BE ENTERED ACCORDINGLY.


Dated: December 20, 2019                    BY THE COURT:

                                            s/Nancy E. Brasel
                                            Nancy E. Brasel
                                            United States District Judge